Columbus & Greenville R. Co. *v.* Lee.*

(In Banc. Feb. 27, 1928.)

[115 So. 782. No. 26535.]

1. Appeal and Error. *Excluding evidence which would not have warranted jury's believing motorist killed in collision with train was intoxicated, if error, held harmless.*

Where plaintiff's intestate, a guest in automobile, was killed in collision with train at crossing, and an unopened bottle of whisky and an empty bottle were found near car immediately after it was struck, and automobile driver had testified on cross-examination that he was not drinking and did not know whether any of the others were or not, excluding answer to question, "Do you know whose whisky that was in the car?" where evidence would have been insufficient to warrant jury in believing that deceased was intoxicated, if error, *held* harmless.

2. EVIDENCE. *Testimony by persons in position to hear that train whistle was not blown and bell was not rung at crossing warranted jury's finding bell was not rung and whistle was not blown (Hemingway's Code 1927, section 7964).*

In action for death of motorist killed in crossing collision, testimony of witnesses who were so situated that they would, in ordinary course of events, have heard bell had it been ringing or whistle had it been blowing, that bell was not rung and whistle was not blown as required by Laws 1924, chapter 320 (Hemingway's Code 1927, section 7964), as train approached crossing, was sufficient to justify jury in finding that bell was not rung and whistle was not blown.

3. RAILROADS. *Railroad was liable for motorist's death if its negligence concurred, though one cause was car's stalling on track.*

Even though stalling of car on track in front of approaching train may have been one proximate cause of death of guest in automobile, railroad company was liable if its negligence concurred, since it is not necessary for defendant's negligence to be sole proximate cause of an injury.

4. RAILROADS. *In action for death of motorist killed at crossing, whether railroad was negligent and whether negligence caused death held for jury (Hemingway's Code 1927, section 7964).*

In action for death of guest in automobile killed in collision with train at crossing, question whether bell was not rung and whistle was not blown as train approached crossing, as required by Laws 1924, chapter 320 (Hemingway's Code 1927, section 7964), and whether defendant's negligence caused death, *held* for jury.

5. RAILROADS. *Instruction based on prima-facie evidence statute held proper, though evidence disclosed facts surrounding striking of automobile by train (Hemingway's Code 1927, section 1717).*

In action for damages for death of automobile passenger killed in collision with train at crossing, instruction based on *prima-facie* evidence statute (Code 1906, section 1985; Hemingway's Code 1927, section 1717), *held* properly given, even though evidence disclosed all facts and circumstances surrounding striking of automobile by defendant's engine.

6. NEGLIGENCE. *Negligence of automobile driver could not be imputed to guest killed in collision with train.*

Negligence of driver of automobile, over whom guest had no control, could not be imputed to guest who was killed when automobile was struck by train at crossing.

7. RAILROADS. *Instruction that guest in automobile must stop, look, and listen before going on railroad track held properly refused.*
   In action for damages for death of guest in automobile killed in collision with train at crossing, instruction that it was duty of guest to stop, look, and listen before going on railroad track *held* properly refused.

8. NEGLIGENCE. *Guest in automobile is chargeable only with his own negligence in not remonstrating with driver against doing negligent act when danger is apparent to him.*
   Guest in automobile driven by another over whom he has no control is chargeable only with his own negligence in not remonstrating with driver against doing of negligent act when danger therefrom was or should have been apparent to him.

9. RAILROADS. *It was automobile driver's duty to do whatever was necessary to ascertain whether train was approaching before driving on track.*
   It was duty of automobile driver to do whatever was reasonably necessary to ascertain whether train was approaching before driving on track at crossing.

10. NEGLIGENCE. *Guest had right to depend on automobile driver to discharge his duty before driving on railroad track until it became apparent that driver would not do so.*
    Guest had right to depend on driver of automobile to discharge his duty to do whatever was reasonably necessary to ascertain whether train was approaching before driving on track unless and until it became or should have become apparent to him that driver would not do so.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1007, n. 74; Evidence, 23CJ, p. 41, n. 71; Railroads, 33Cyc, p. 981, n. 81; p. 1016, n. 66; p. 1017, n. 72, 73; p. 1042, n. 25; p. 1104, n. 63; p. 1128, n. 63; p. 1134, n. 9; p. 1140, n. 36; As to imputed negligence of driver of automobile to guest, see annotation in 8 L. R. A. (N. S.) 597; L. R. A. 1915A, 961; 2 R. C. L. 1207; 1 R. C. L. Supp. 743; 4 R. C. L. Supp. 159; 5 R. C. L. Supp. 148; 6 R. C. L. Supp. 139; 22 R. C. L. 1047; 3 R. C. L. Supp. 1302; 4 R. C. L. Supp. 1485.

APPEAL from circuit court of Carroll county, First district.

HON. A. T. PATTERSON, Special Judge.

149 Miss.—35.

Action by J. W. Lee, administrator· of the estate of W. B. Pentecost, deceased, against the Columbus & Greenville Railroad Company. From the judgment, defendant appeals. Affirmed.

*Reporter's Note*: This cause was first pleaded to and affirmed by Division "A" without a written opinion. Thereafter a Suggestion of Error was filed and under Rule 34, Section 6 the judgment was set aside and the cause presented to the Court en Banc.

*Gardner, Odom & Gardner,* for appellant.

The stalling of the car was the proximate cause of this accident. *L. & N. R. Co.* v. *Harrison* (Fla.), 83 So. 89; *Barrett* v. *U. S. R. R. Administration,* 194 N. W. 223.

Mr. Steen, witness for plaintiff, contends that the whistle was not blown, and the bell rung, as the statute requires. It is sufficient· to say that the overwhelming testimony in this case shows that the signals were given. Mr. Forbes, who testified for plaintiff says that the whistle was blown. *Seaboard Air Line Ry. Co.* v. *Myrick,* 109 Fla. 193. Positive evidence that signals were given is held to overcome evidence that they were not heard by other witnesses. But if one who was intently listening for, and expecting the signals, and could have heard them, testified that he did not hear them, his evidence may be of equal weight with the evidence that they were given, and it is for the jury to determine from the evidence. 3 Elliott on Railroads, 1653; 71 Am. Dec. 236; 18 P. 305; 82 N. E. 986; 44 Pac. 607; 30 N. J. L. 188; 63 Atl. 856; 63 N. Y. 622; 21 N. W. 241; *Artz* v. *Railroad Co.,* 34 Ia. 154; *Gunby* v. *Colo. & S. R. R. Co.,* 235 Pac. 556; 78 Atl. 1048; 69 Atl. 1087; 61 Atl. 903; 90 N. E. 1116. The fact that the witness did not hear crossing signals will not avail, as against the positive testimony that the

signals were given, and especially so where the witness was paying no attention to ascertain if any were given. 100 Pac. 1016; 266 S. W. 644.

The failure on the part of the plaintiff to call the witness Mike Buford, who was evidently friendly to plaintiff, is a circumstance from which the inference should be drawn that his testimony, if introduced, would have been unfriendly and hostile to the plaintiff. 1 Wigmore on Evidence, section 285. It cannot be said that Mr. Buford's testimony would likely be prejudiced against the plaintiff on account of their relations. 4 Wigmore on Evidence, 2273; 22 C. J. 115; *Anderson* v. *Cumberland Tel. & Tel. Co.,* 86 Miss. 341; *Bunckley* v. *Jones,* 79 Miss. 1; *Calhoun* v. *Burnett,* 40 Miss. 599. 10 R. C. L. 887 lays down the rule that the failure to produce a witness available to both parties should operate against the party who has the best opportunity to know whether his testimony would be favorable. Ann. Cas. 1914A, 916. Defendant could not afford to call Buford as a witness, because to have done so would have made Buford its witness, and precluded appellant from impeaching him, had Buford made any damaging admissions after the accident with reference to what was said and done by him and the deceased, with reference to the approaching train, which caused the accident. *Western & Atlantic Railroad Co.* v. *Morrison,* 66 A. S. R. 173.

The instruction given for plaintiff should not have been given and was error, because this court has held in the *Fondren case,* 110 So. 365, that, "where testimony fully explains how injury occurred, it is error to give an instruction under *prima-facie* statute." It cannot be denied that the testimony does not show how the accident happened. It was peculiarly unfortunate that this instruction under the *prima-facie* statute was given in this case. There was no reason whatever to invoke the *prima-facie* statute, as the testimony fully explained all the facts connected with the accident, and besides, plain-

tiff's testimony shows that there was a flagrant, wilful and we might say almost premeditated violation of the stop, look and listen statute. According to plaintiff's own testimony the unfortunate accident was occasioned directly and proximately by his act in stopping the car on the track just about the time the train reached the crossing. For the court to tell the jury that, in the face of this testimony, the railroad company should be burdened with the presumption of negligence, was certainly the acme of injustice. There was not a single element of doubt as to how the accident occurred, no conflict or contradiction nor was there anything connected with the evidence that would authorize the giving of this instruction. Where the testimony shows how the accident happened, no instruction on the *prima-facie* statute should be given. *G. M. & N.* v. *Brown,* 102 So. 855; *Davis* v. *Temple,* 91 So. 691; *G. M. & N. R. R. Co.* v. *Arrington,* 107 So. 378; *Davis, Director-General* v. *Elzey,* 88 So. 630; *Y. & M. V. R. R. Co.* v. *McCullers,* 89 So. 158. The giving of this instruction was error, and that this case should be reversed and judgment entered here for appellant.

The court gave three other instructions, for the plaintiff each of which was error. The gist of these instructions are as follows:

"If the negligence of Julius Steen in operating his automobile and the negligence of the employees of the Columbus & Greenville Railway Company in operating its train united in causing the accident in which W. B. Pentecost was killed, it is no defense by the railroad company to show that Steen was to blame in causing the accident."

"If the death of W. B. Pentecost was the result of the concurrent negligence of the driver of the automobile and that of the railroad company, it is the duty of the jury to find for the plaintiff."

"If the deceased, W. B. Pentecost was, a guest in the automobile driven by Julius Steen and, the said Pente-

cost was not at the time directing or controlling the movements, of the automobile, then the negligence of the driver of the automobile, cannot be imputed to the said Pentecost, deceased.''

In other words, that the plaintiff in this case was entitled to recover regardless of any negligence on the part of Mr. Pentecost, the deceased; that Mr. Pentecost was not expected to do anything for his own safety. This instruction was clearly error, and should not have been given, and, of itself, should reverse this case. None of the occupants of the car made any protest or objection whatever to his driving the car up on the embankment. See *Y. & M. V. R. R. Co.* v. *Lucken,* 137 Miss. 572. Notwithstanding the fact that the negligence of the driver will not be imputed to a passenger, yet it is necessary that the passenger himself must exercise ordinary care. 29 Cyc. 551; 33 Cyc. 1017; 20 R. C. L. 159; 20 R. C. L. 132; 70 L. R. A. 681; 25 A. S. R. 416; *I. C. R. R. Co.* v. *McLeod,* 78 Miss. 334; 84 A. S. R. 630; 17 A. S. R. 648; 15 A. S. R. 733; 47 A. S. R. 125.

If a person voluntarily enters a private conveyance of another, and is injured by the carelessness of the person in charge of the conveyance concurrently with the negligence of a third person, there can be no recovery against such third person. 20 R. C. L. 163; 100 Mich. 103, 58 N. W. 663; 43 A. S. R. 436; 23 L. R. A. 693; 86 Mo. 200; 56 Am. Rep. 425; 14 Mont. 124; 35 Pac. 904; 43 A. S. R. 623; 43 Wis. 513; 28 Am. Rep. 558; 141 Wis. 57; 123 N. W. 629; 135 A. S. R. 30; 25 L. R. A. (N. S.), 40; Notes: 110 A. S. R. 291; 8 L. R. A. (N. S.), 639; 3 Ann. Cas. 705; 19 Ann. Cas. 1227.

In *Jobe* v. *M. & C. R. R. Co.,* 71 Miss. 740, the court holds that, where one is familiar with the crossing and knowing that the train is about due, fails to stop, look and listen, and drives his wagon thereon, without again stopping and looking in the direction from which the train is due, he cannot recover for injuries received by being

struck by the train, although the defendant was negligent as to signaling, and running in town at an unlawful rate of speed.

In crossing a railroad track, where one can see, he does so at his peril. *Murdock* v. *I. C.,* 77 Miss. 487; *Jobe* v. *M. & C.,* 71 Miss. 734; *Winterton* v. *R. R.,* 73 Miss. 831; 78 Miss. 334. A passenger or guest in an automobile operated by another is bound to exercise reasonable care for his safety, and failure to do so constitutes contributory negligence and bars any right of recovery against a third person for an injury resulting in part from the latter's negligence. This rule was applied in the following cases: *Baltimore & M.* v. ———, 92 C. C. A. 335, 166 Fed. 641; *Brommer* v. *Penn. R. Co.,* 29 L. R. A. (N. S.), 924; 103 C. C. A. 135, 179 Fed. 577; *Thompson* v. *Los Angeles, etc.,* 165 Cal. 748, 134 Pac. 709; *United R. & E. Co.* v. *Crain,* 123 Md. 332, 91 Atl. 405; 121 App. Div. 716, 106 N. Y. Supp. 522, affirmed N. Y. Supp. 1068; *Senft* v. *Western, etc.,* 92 Atl. 553; *Wachsmith* v. *Baltimore, etc.,* 233 Pa. 465, 82 Atl. 755, Ann. Cas. 1913B, 679; *Herman* v. *R. I. Co.,* 90 Atl. 813; *Pla. Hernandez* v. *San Juan L. & T. Co.,* 4 Porto Rico, Fed. Rep. 138; *Rebillard* v. *Minneapolis St. P. & Ste. M. R. Co.,* L. R. A. 1915B, 955.

The peremptory instruction for the defendant should have been given and its refusal was error. We call attention to the two instructions refused for the defendant, which are as follows:

"If you believe from the evidence that, had plaintiff's intestate stopped, looked or listened before attempting to cross the track, and that the failure to stop, look or listen was the proximate cause of the death of plaintiff's intestate, then you will find for the defendant, unless you further believe that defendant was guilty of some negligence in operating its train."

"The court instructs the jury for the defendant that it was the duty of plaintiff's intestate to stop, look or listen before attempting to cross the track, and if the

jury believe from the evidence that, had plaintiff's intestate stopped, looked or listened, he would not have been struck by plaintiff's locomotive, then they will find for the defendant, unless you further believe that defendant failed to continuously blow the whistle or ring the bell on its locomotive for a distance of three hundred yards immediately before passing, and while passing over the crossing.''

One of our main defenses was that the damages sued for were caused by the negligence of plaintiff's intestate in failing to have the car stopped, and failing to look and listen before the car attempted to cross the track, and that the failure to do this was the proximate cause of his death. These instructions are dependent upon the fact that, before the jury could find for the defendant, the jury must believe that the defendant was not guilty of any negligence in operating its train. Failure to grant these instructions absolutely tied the hands of the counsel for defendant in arguing this case before the jury. A more helpless position can hardly be conceived than that of counsel for the defendant in this case, undertaking to argue the defense for the railway company, and then denied the right to say one word about the negligence of the plaintiff's intestate, or the driver of the car, in doing anything to avoid this accident. Notwithstanding the testimony shows that the occupants of the car were guilty of the grossest negligence in failing to take any sort of precaution for their safety, yet the court refused to permit the defendant the right to refer to this in the argument. The court seemed to be under the impression that the defendant could not invoke the violation of this statute, by either the driver of the car, or the occupants, because the act provides that the comparative negligence statute and the *prima-facie* statute of negligence apply in these cases, as in other cases of negligence. Notwithstanding the fact that the *prima-facie* statute and our comparative negligence statute could be invoked by

the plaintiff, where there is a violation of the statute on the part of the driver of the car, still, this did not preclude the defendant from showing this violation of this act, as a ground of defense. We were permitted to show to the jury that the act had been flagrantly violated, yet on the argument were denied the right to mention the fact and discuss it under these instructions. A violation of the law is negligence *per se* and yet, in the face of this fact, the court below refused to permit us to comment on the negligence of the driver and the occupants of the car, although this was a case based on negligence. 3 Elliott on Railroads, sec. 1661, 17 A. S. R. 775; 21 A. S. R. 374; 19 Atl. 449; 23 Pac. 314.

There was absolutely no conflict as between the witnesses for plaintiff and for the defendant on any material fact connected with this case, even giving credence to the testimony of Mr. Steen—something that is impossible in view of the many contradictions—and, there being no conflict, there was nothing to submit to the jury. *Mississippi Levee Commissioners* v. *Montgomery,* 110 So. 843.

*R. C. McBee,* brief for appellee.

Steen's testimony was enough to carry the case to the jury. If the testimony of Steen is to be believed, he was not negligent. However that may be, the fact that he was negligent will not exculpate the railroad from liability. *G. & S. I.* v. *Carson,* 137 Miss. 613. The testimony of Steen is not to be discarded. *Davis, Director-General R. R.* v. *Temple,* 129 Miss. 6; *Hinds* v. *Moore,* 124 Miss. 500, 80 So. 1.

We submit that this is not a case of positive testimony on the one hand, and negative on the other. If this court should hold that Steen was guilty of gross negligence still the plaintiff must recover, if the railroad company was negligent. *R. R. Co.* v. *Carlson, supra; I. C. R. R. Co.* v. *Clark,* 85 Miss. 691; *Nelson* v. *I. C. R. R. Co.,* 98

Miss. 295; *St. L. & S'. F. R. R. Co.* v. *Sanderson,* 99 Miss. 148; *Y. & M. V. R. R. Co.* v. *Hardie,* 100 Miss. 132.

Appellant complains that no instruction on the *prima-facie* statute should have been given, and cites *C. & G. R. Co.* v. *Fondren,* 110 So. 365. The instructions in the present case is practically a copy of that given in the case of *G. M. & N. R. R. Co.* v. *Hudson,* 107 So. 369. Since the Thornhill case was decided, 106 Miss. 409, it has been very clear that cases such as the case at bar must be submitted to the jury. "Negligence is not simple fact in itself, but is rather an inference from facts." 5 Words and Phrases, 4748.

Failure of Mike Buford to testify is a novel point. We might go outside of the record and state a number of reasons why Mike didn't testify. We content ourselves with the record, however by saying that neither his availability nor his attendance as a witness appears. It was for us to determine whether we would place him upon the stand or not. *G. & S. I. R. R. Co.* v. *Carlson,* 137 Miss. 613; *G. M. & N. R. R.* v. *Hudson,* 107 So. 370.

Complaint is made because "these instructions tell the jury that Mr. Pentecost, the deceased, was not called upon to exercise any sort of care or prudence for his own protection." The court gave two instructions on this subject.

It is complained that the court erred in refusing the two instructions set out in appellant's brief, based upon the "stop, look and listen law," chapter 320, Laws of 1924. It was never the law anywhere, as far as we have been able to observe, even where the duty to "stop, look and listen" is absolute, that one was barred from recovery unless contributory negligence was such a bar. Chapter 320, Laws of 1924, does not change the rule, but expressly provides "that the violation of this act shall not affect recovery and the question of negligence or the violation of this act shall be left to the jury." See *G. & S. I. R. Co.* v. *Saucier,* 139 Miss. 497. In the case at bar,

contributory negligence was not pleaded, was not proven, and no instruction was asked by the defendant to diminish the damages in accordance with the statute.

No witness has testified that Pentecost could or did discover any danger which the driver had overlooked, or had not discovered. The jury reached the conclusion that they discovered it at the same time and the driver then did what he could to avoid the danger. The witnesses are in hopeless conflict, and therefore a proper case for the jury to decide was presented by this record, and their decision is final. *Bell* v. *So. Ry. Co.*, 30 So. 821; *Hopson* v. *Ry. Co.*, 87 Miss. 789.

*Gardner, Odom & Gardner,* in reply brief for appellant.

We note an entire failure to answer that part of our brief, with reference to the ''proximate cause'' of this accident that is, the stalling of the car on appellant's track. Counsel refers to the proximate cause, by undertaking to make some capital of the fact that there is some immaterial conflict in the testimony of both the plaintiff's and defendant's witness with reference to the location of the car at the time it was struck. The only person who denies that the car was at rest was Mr. Steen, an interested witness, and even his testimony shows that the proximate cause was his applying the brake and, had he not applied the brake, as Mr. Lary testified, he could have crossed the track in front of the train. Whether the car was on its side and at rest, or slowly moving, the proximate cause was the act of Mr. Steen in applying the brake.

Assume for the sake of argument, that the bell was not rung nor the whistle blown, still, plaintiff is not entitled to recover, because the proof shows that there is no causal connection between the failure to give the statutory signals and the injuries sustained. *Billingsley* v. *I. C.*

*R. R. Co.,* 100 Miss. 612; *Y. & M. V. R. R.* v. *Cox,* 132 Miss. 564; *R. R.* v. *Carter,* 77 Miss 511; *Brown* v. *R. R. Co.,* 103 Miss. 315; *R. R.* v. *Pace,* 109 Miss. 667; *Hinds* v. *Moore,* 124 Miss. 500; *R. R.* v. *McGee,* 117 Miss. 236.

Counsel undertakes to get some consolation from the decision of this court in the case of the *G. M. & N. R. R. Co.* v. *Hudson,* 142 Miss. 542. The facts in this case are not at all parallel with the facts in the Hudson case. Peremptory instructions should have been granted. *A. & V. R. R. Co.* v. *McCoy,* 105 Miss. 737, is in point. The court there said: "The entire occurrence has been shown. We do not see that negligence has been proved against appellant. The *prima-facie* case provided in section 1985, Code of 1906 has been met. The peremptory instruction asked for by appellant should have been given." Also see, *Hubbard* v. *So. Ry. Co.,* 120 Miss. 832; *I. C. R. R. Co.* v. *Ash,* 128 Miss. 410.

*R. C. McBee,* in reply brief for appellee, to the suggestion of error.

This brief is filed in response to the following request of this court:

"This court desires a reply from counsel for appellee to the suggestion of error filed herein by counsel for appellant, addressed to the contention that 'the giving to the plaintiff of an instruction on the *prima-facie* statute' was error. One of the cases cited in support of this contention is *Columbus & Greenville Railway Company* v. *Fondren,* 110 So. 365. The court desires a discussion of this case in connection with the following prior cases: *R. R. Co.* v. *Phillips,* 64 Miss. 693; *R. R. Co.* v. *Murray,* 91 Miss. 546; *Hollingshed* v. *R. R. Co.,* 99 Miss. 464; *R. R. Co.* v. *Thornhill,* 106 Miss. 387; *R. R. Co.* v. *Knight,* 138 Miss. 621; and *R. R. Co.* v. *Hudson,* 142 Miss 542, the brief of counsel for appellees to be filed on or before Monday, October 3d, and reply thereto of counsel for appellant to be filed within one week thereafter These

dates may be changed by written agreement of counsel filed with the clerk of this court, copies to be served in accordance with the rules of this court.''

We take it that the court desires a discussion of the Fondren case in connection with the prior cases listed, that and nothing more, and we shall therefore confine ourselves within the limits of the request of this court. The court there said: ''It was the duty of the jury to' pass upon the issues of fact under the conflicting testimony and decide from the testimony alone whether or not the railroad company was guilty of negligence.'' As we see it, the opinion in the Fondren case stands alone. It is not supported by the cases cited. *G. M. & N. R. Co.* v. *Brown,* 138 Miss. 39, 102 So. 855. The jury were instructed not only that proof of injury by the train created a case of *prima-facie* liability, but in addition: ''This statutory presumption cannot be overthrown by conjecture; the circumstances of the accident must be clearly shown and the facts so proven must exonerate the company from blame.'' The question the court had to decide was whether this instruction should have been granted or not. ''It will be noted that the court in the *Brown case, supra,* only held that the railroad company did not have to exonerate itself from blame where the facts were all in evidence.'' *Ry. Co.* v. *Hudson,* 142 Miss. 542.

In *Davis* v. *Elzey,* 126 Miss. 789, the instruction condemned instructed the jury that, ''if you are satisfied by a preponderance of the evidence that the plaintiff was injured by the running of a train of defendant, but are in doubt as to the facts and circumstances attending the injury, the defendant will be presumed to have been guilty of negligence and you will find for the plaintiff.'' *Owen* v. *R. R. Co.,* 77 Miss. 142, is cited in the Thornhill case. The court said: ''This case seems to have been decided upon the theory that the statutory presumption here under consideration was involved.'' *R. R.* v. *Thornhill,* 106 Miss. 387.

In *R. R.* v. *Arrington,* 107 So. 378, the instruction condemned told the jury that, "the burden is upon the defendant to exculpate itself from any and all negligence." The court, citing the case of *R. R.* v. *Brown, supra,* held this to be error. *R. R.* v. *Thornhill,* 106 Miss. 387, is cited as authority in the Fondren case. Two cases could not be more nearly exactly opposite. In none of the cases above cited by the Fondren case is the Thornhill case overruled, modified, criticised, distinguished, limited, explained or qualified. In the group of cases listed in the request by this court for this brief, and cited in the Fondren case, it is quoted with approval as follows: *Hollingshed* v. *R. R.,* 99 Miss. 464; *Davis* v. *Elzey,* 126 Miss. 789; *R. R.* v. *Brown,* 138 Miss. 39, 102 So. 855; *Davis* v. *Temple,* 129 Miss. 6; *R. R.* v. *Fondren,* 110 So. 366; *R. R.* v. *Knight,* 138 Miss. 621; *R. R.* v. *Hudson,* 142 Miss. 542.

The Thornhill case construed a statute which first appeared in our law as section 1095 of the Code of 1880. The opinion declared as its purpose "that no doubt may hereafter exist as to what the rule governing the particular point here under consideration is, we will restate it, after an examination of all prior decisions of this court bearing hereon which have been called to or come under our observation." The declared purpose of this opinion was accomplished. *Bonds* v. *M. & O. R. R. Co.,* 125 Miss. 547.

The question is stated in the Thornhill case to have been first decided in the case of *R. R. Co.* v. *Phillips,* 64 Miss. 693, 2 So. 537. Since that construction, the legislature has met in regular session twenty times, and the statute, with the construction placed upon it, has not been repealed or amended.

The Phillips case was last cited in *R. R.* v. *Knight,* 138 Miss. 621, which case is listed in the request for opinion. It is cited and approved in the case of *Southern Ry.* v. *Murray,* 91 Miss. 546, where the court gave the *prima-facie* instruction and this court held that it was not im-

proper to do so. In *Hollingshed* v. *R. R.*, 99 Miss. 464, there was apparently a conflict in the testimony, and Hollingshed was refused an instruction based upon the *prima-facie* statute. This court said: "The statute applies, regardless of whether the facts attending the injury are in evidence or not. It was therefore error to refuse this instruction."

In *R. R. Co.* v. *Knight*, 138 Miss. 622, this court approved the giving of an instruction on the *prima-facie* statute. The appellant contends that this instruction constituted reversible error, since this court has held that, when the facts and circumstances under which the injury was inflicted are in evidence, the issues must be determined from the facts and not on any presumption of negligence, and that it was error to grant this instruction for the reason that the attendant facts were shown in this case. This question is controlled by previous decisions of this court. *Ry. Co.* v. *Thornhill*, 106 Miss. 387, 63 So. 674; *R. R. Co.* v. *Phillips*, 64 Miss. 693, 2 So. 537.

In *R. R.* v. *Hudson*, 142 Miss. 542, the court said: "Even though proof of an injury by the running of a locomotive or cars raises a presumption of lack of ordinary skill and care on the part of the defendant, yet, when the facts are proven by either party, the presumption of negligence disappears, and liability of the defendant must then be. determined from the evidence, and the jury must find for the defendant, unless you believe from the evidence that the defendant was guilty of negligence and that the negligence of the defendant was the proximate cause of the plaintiff's injury." By this instruction the jury were informed that, if the facts and circumstances of the accident were shown, then the presumption did not apply, and the two instructions taken together constitute the law. In a legal sense, where there is a sharp dispute, it cannot be said that the facts and circumstances are known, and it may well be that in this case the jury

was warranted in turning to this *prima-facie* presumption in order to legally determine the facts. We therefore submit that the case of *R. R.* v. *Fondren,* 110 So. 365, is its own authority, that there is no basis for this opinion in the cases which it cites, save the dicta in the case of *R. R.* v. *Arrington,* 107 So. 378.

The defendant did not ask a counterinstruction. In the Thornhill case, we find the following language: "Even though the facts and circumstances are in evidence, and although there may be no conflict therein, as to what these facts and circumstances are, unless they justify the court in directing a verdict, it is proper to charge the jury on request of the plaintiff that proof of injury by the running of the cars is *prima-facie* evidence of negligence, and on request of defendant, that since the facts and circumstances under which the injury was inflicted are known, they will determine whether or not the defendant was negligent solely therefrom without resorting to any presumption of negligence." We have never seen the contention anywhere that it is necessary for the plaintiff to request a counterinstruction. By the above excerpt from the opinion in the Thornhill case, this is specifically declared to be the duty of the defendant. The defendant cannot complain that the court did not give the counterinstruction because he didn't ask it. *Dixon* v. *State,* 64 So. 468; *Lindsay* v. *Nix,* 108 Miss. 814; *R. R.* v. *Campbell,* 114 Miss. 803. Clearly plaintiff is not required to embody in his instructions a theory of law which is not supported by his proof. *R. R.* v. *Lucken,* 137 Miss. 572; *R. R.* v. *Messina,* 109 Miss. 143.

The rule announced in the Fondren case cannot affect this appeal. The present case was tried in October, 1926. The decision in the Fondren case was handed down on November 22, 1926, after this judgment was rendered. If the rule announced in the Fondren case had been on the date of its decision November 22, 1926, a legislative act instead of a decision of this court, it could not affect

the case at bar. *McCullough* v. *Virginia,* 172 U. S. 102, 43 L. Ed. 382; *Gilman* v. *Tucker,* 128 N. Y. 190, 26 A. S. R. 46; 12 C. J. 956; *Richards* v. *City Lumber Co.,* 101 Miss. 691.

Reply brief of appellant to the brief of appellee on suggestion of error.

We have just been handed the brief by counsel for appellee, in response to the request of this court.

All of the decisions mentioned in the memorandum result from and are depended upon the decision of this court in the *Phillips case,* 64 Miss. 693. We shall first discuss that case, and show, we think, that it was wrongfully decided and, of course, has since been wrongfully followed. The court in that case discussing the *prima-facie* statute says: "When the facts appear, no matter how, it is a question determinable from them whether or not there was want of reasonable skill and care. The statute was enacted to meet cases where the manner of the injury inflicted is not known to others than the employees of the railroad company, but it is equally applicable where a cloud of witnesses see the injury. It is not needed, there, it is true, but it is not error to invoke it, for the law affects the railroad company with liability, *prima-facie,* in every case of injury inflicted by the running of its locomotives or cars."

It is Hornbook law that instructions are never given unless needed. This is the only decision we have ever seen holding that instructions can be granted in a case where they are "not needed." That part of the decision which says that it is permissible and proper to grant these instructions but "not needed" when given, is confusing to say the least, and certainly should not be followed. 14 R. C. L. 768 lays down the rule that: "The office and purpose of an instruction is to enlighten the jury and to aid them in arriving at a correct verdict." Our court has said, in *Jarnigan* v. *Fleming,* 43 Miss. 710, "It is error for a court to instruct a jury upon abstract legal

propositions inapplicable to the evidence, however correctly such proposition may be stated." See *McIntyre* v. *Klein,* 30 Miss. 361.

Under the decision in the Phillips case, the effect is to give the jury conflicting instructions, in that the plaintiff is given an instruction to the effect that the happening of the injury is *prima-facie* evidence of negligence, and on the other hand the defendant is given an instruction to the effect that since the testimony shows how the accident happened, the jury will decide the case not on presumption but on the facts in the case. As this court said in the case of *R. R.* v. *McGowan,* 92 Miss. 612: "Plainly, here are two principles directly opposite to and directly contradictory of each other, given to the jury for their guidance." When the jury received these instructions, directly opposed to each other, it is not to be wondered that they are often bewildered and render outrageous verdicts. It makes no difference how strong the instructions may be for the railroad company, the instruction on the *prima-facie* statute, in the hands of opposing counsel, almost invariably results in a verdict for the plaintiff, because of the inability of the jurors to determine and see the difference between these conflicting instructions. 14 R. C. L. 777: "Where instructions give to the jury contradictory and conflicting rules for their guidance, which are unexplained, and following either of which would lead or might lead to different results, then the instructions are inherently defective and erroneous." In support of the text, R. C. L. cites other decisions of this court. *Ry. Co.* v. *Kendrick,* 40 Miss. 374, 90 Am. Dec. 332; *Pollard* v. *State,* 53 Miss. 410, 24 Am. Rep. 703; 100 A. S. R. 900.

This court has said time and again that the giving of conflicting instructions is error. 40 Miss. 45; 92 Miss. 603. "When the circumstances attending the injury are shown by the evidence, the case must then be determined by the jury on the facts proved, and not upon any pre-

149 Miss.—36.

sumption of negligence created by statute." *Bourgeois* v. *R. R.*, 66 Miss. 3. In *Hamlin* v. *R. R.*, 72 Miss. 39, this court said: "The whole effect of the statute is to devolve upon the defendant the burden of proof of due care; it is not required to carry this burden, with the presumption of negligence again added as a rider." It is true this case is referred to and criticised in the *Thornhill case*, 106 Miss. 387, but we are at a loss to understand this reference to the Hamlin case. Under this state of facts, the decision in the Hamlin case is fully supported and sustained by the decisions of this court in the *Daniell case*, 108 Miss. 358; the *McCullers case*, 121 Miss. 666; the *Brown case*, 138 Miss. 39; the *Temple case*, 129 Miss. 6; the *Arrington case*, 107 So. 378; the *Elzey case*, 126 Miss. 789; the *Grantham case*, 138 Miss. 361. The Hamlin case expressly overrules that part of the decision in the Phillips case which authorized the giving of an instruction on the *prima-facie* statute when "not needed." *Owen* v. *R. R.*, 77 Miss. 142, in effect overrules the decision in the Phillips case, authorizing the giving of an instruction on the *prima-facie* statute when "not needed."

The strongest best reasoned case overruling the Phillips case is the decision in the *Nichols case*, 83 Miss. 126. This case, we submit, directly and in express terms overrules the Phillips case. It is referred to in the *Murray case*, 91 Miss. 546, and in the Thornhill case, but not criticised or modified or overruled in any way.

*Thornhill* v. *R. R.*, 106 Miss. 387, is a case in which this court undertook to review and harmonize and reconcile all the decisions rendered prior to that time, based on the *prima-facie* statute, in which there were numerous conflicts, many of which were straightened out and some overruled. This court, while technically approving the rule announced in the Phillips case, did it reluctantly because we find this significant statement: "Presumption created only for the purpose of supplying *prima facie* an inference that might be drawn from a fact, were that

fact known, disappears and cannot be resorted to when the fact becomes known. And thereafter such inference can be drawn only in event the fact warrants it.''

We call attention to the *Daniell case,* 108 Miss. 358, which we think also overrules the Phillips case and the Thornhill case. In the *McCullers case,* 121 Miss. 666, this court says: ''When the facts and circumstances have been proven, or have been found by the jury when the evidence relative thereto is conflicting, the presumption of negligence raised by the statute disappears, and the liability of the defendant must then be determined from the evidence, and the jury should find for the defendant, unless it appears from the evidence that he was guilty of negligence which caused the plaintiff's injury.'' The court expressly says that, when the facts and circumstances have been proven, the presumption of negligence raised by the statute disappears. In the *Elzey case,* 126 Miss. 788, the court said: ''When the facts are fully disclosed by the evidence, the question is to be determined by the evidence, and not by the presumption of the statute.''

In the *Arrington case,* 107 So. 378, there was an instruction given on the *prima-facie* statute. The court in passing upon this instruction said: ''This instruction ought not to have been given because the testimony in the case sufficiently explains every material fact connected with the infliction of the injury.''

In the *Temple case,* 129 Miss. 6, the court emphasizes the fact that, when the facts are in dispute that the duty devolves upon the jury to pass upon the veracity of the witnesses, and, as the court says in this opinion, ''they cannot sidestep this duty by invoking the statute.''

In the *Brown case,* 138 Miss. 39, the court said: ''In our opinion it was improper to invoke the *prima-facie* statute as was done. Where the facts are in evidence, the jury must determine the negligence from the evidence and not from the statute. This instruction has been con-

demned in the following cases: *R. R.* v. *Thornhill*, 106 Miss. 387, 63 So. 674; *Ry.* v. *Daniell*, 108 Miss. 358, 66 So. 730; *R. R.* v. *Gray*, 118 Miss. 612, 79 So. 812; *Hines* v. *McCullers*, 121 Miss. 789, 88 So. 630, 89 So. 666; *Davis* v. *Temple*, 129 Miss. 6, 91 So. 689, 138 Miss. 68.'' If the Fondren case is to be overruled, then this case must be overruled.

In the *Grantham case,* 138 Miss. 360, the court said: ''—the jury may be led to follow the presumption charged by the court, and thus the case would not be determined upon the testimony given by the witnesses as it should.'' That is exactly what has happened in the instant case. A case bearing directly on the question involved here is *R. R.* v. *Turnipseed,* 219 U. S. 35, 55 L. Ed. 78, which is an appeal from the decision of this court in the case of *Hicks* v. *R. R., 91* Miss. 273. The court said: ''The statutory effect of the rule is to provide that evidence of an injury arising from the actual operation of trains shall create an inference of negligence, which is the main fact in issue. The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary.'' As said by the court, when there is introduced some evidence on the part of the defendant, showing that the company was not negligent, the statute disappears, or goes out of the case, and is no longer a factor in reaching the verdict and should not be referred to in any instruction thereafter given. 4 Wigmore on Evidence, p. 3534.

The decision in the Fondren case, was foreshadowed by prior decisions. The decision in the Fondren case is but the logical result of the protest and evolution against the decision in the Phillips case. It has been impossible in the very nature of things for all of these various decisions to be harmonized and reconciled. The time has come to settle this question once and for all and let the bench and bar of Mississippi understand what the *prima-facie* statute means, giving it a sane, definite, fair con-

struction, and one that will be just and fair to all parties in interest.

Appellee contends that because various sessions of the legislature have come and gone since the decision in the Phillips case, and those decisions following it, for that reason, it has been approved and ought to stand and the question settled. This is poor logic. A bad precedent never makes good law, and nothing is settled until it is settled right.

To overrule the decision in the Fondren case, and those cases which it follows, would be, we submit, a step backward and would result in bedlam so far as the construction of the *prima-facie* statute is concerned.

Argued orally by *A. F. Gardner,* for appellant, and *R. C. McBee,* for appellee.

SMITH, C. J. The appellee's intestate, W. B. Pentecost, was one of three guests in a Ford coupe owned and being driven by Julius Steen. The road along which the automobile was traveling crossed the appellant's railroad, and the automobile, traveling at the rate of twenty-five or thirty miles an hour, reached the crossing at the same time that one of the appellant's trains was approaching it. Steen drove the car on the railroad track without stopping, and did not see the approaching train until just before the automobile went on the track. He then applied the brake and tried to stop, intending to back off of the track, but the train struck the car about the time it stopped and before he could back it off of the track. Had Steen stopped or looked or listened carefully, he would have discovered the approaching train. The train struck the automobile, and killed the appellee's intestate. The bell on the engine that was pulling the train was rung, according to the engineer and fireman, who were corroborated by other witnesses, as it approached the crossing for the distance therefrom required by chapter 320, Laws of 1924 (Hemingway's 1927 Code, section 7964). According to the evidence of other

witnesses who testified for the appellee, and who were so situated that they would, in the ordinary course of events, have heard the bell had it been ringing, or the whistle had it been blowing, the bell was not rung and the whistle was not blown as the train approached the crossing.

An unopened bottle of whisky and an empty bottle which had recently contained whisky were found near the car immediately after it was struck by the train. Steen testified for the appellee, and, on cross-examination, was asked "Were any of you drinking?" to which he replied "I was not; I don't know whether any of the rest of the men were or not." He was then asked, "Isn't it a fact that all of you were drinking?" but, on objection by counsel for the appellee, was not permitted to answer. The witness again stated, in answer to another question, that he "was not drinking" and "was not drunk." He was then asked, "Do you know whose whisky that was in the car?" but, on objection by counsel for the appellee, was not permitted to answer, the court ruling "that drunkenness or sobriety of the witness can be inquired into but not the other parties." No evidence of other witnesses as to sobriety or drunkenness of the appellee's intestate was offered by the appellant, and it does not appear from the record that such evidence was obtainable. Mike Buford, one of the occupants of the car when it was struck by the appellant's engine, was not called as a witness by either side, and no reason therefor was given.

The appellant's complaints here are, that:

(1). The appellee should have introduced Mike Buford as a witness.

(2) The court below erred (1) in refusing to permit Steen to answer the questions propounded to him on cross-examination, which have been hereinbefore set out; (2) in instructing the jury for the appellee (a) "that, if the jury believe from the testimony that the plaintiff's intestate was killed by the running and operating of the

train of the defendants, then under the law this proof is *prima-facie* evidence that the death of the plaintiff's intestate was sustained as a result of the negligence of the defendant in operating and running its train," (b) "that the negligence of the driver of the automobile, if there was such neglience, cannot be imputed" to the appellee's intestate (this charge was embodied in varying language in three of the instructions granted the appellee), and (c) in refusing the following instructions requested by the appellant:

"The court instructs the jury for the defendant that, if they believe from the evidence that, had plaintiff's intestate stopped, looked, or listened before attempting to cross the track, and that the failure to stop, look, or listen was the proximate cause of the death of plaintiff's intestate, then they will find for the defendant, unless you further believe that defendant was guilty of some negligence in operating its train.

"The court instructs the jury for the defendant that it was the duty of plaintiff's intestate to stop, look or listen before attempting to cross the track, and, if the jury believe from the evidence that, had plaintiff's intestate stopped, looked, or listened, he would not have been struck by plaintiff's locomotive, then they will find for the defendant, unless you further believe that defendant failed to continuously blow the whistle or ring the bell on its locomotive for a distance of three hundred yards, immediately before passing, and while passing over the crossing."

The evidence fails to disclose that any complaint was made by the appellant in the court below of the failure of the appellee to call Mike Buford as a witness; but, assuming that the court's attention was called thereto, and assuming that counsel for the appellant are correct in saying that the jury had the right to presume, from appellant's failure to call Buford as a witness, that his testimony would have been adverse to him (as to which we

express no opinion but refer to *Bunckley* v. *Jones,* 79 Miss. 1, 29 So. 1000, wherein the presumption was permitted, and *Brown* v. *State,* 98 Miss. 786, 54 So. 305, 34 L. R. A. (N. S.), 811, wherein it was not), nevertheless, no question for review is here presented, for the reason that the jury were not prevented by any ruling of the court from presuming that Buford's evidence would have been adverse to the appellee.

We will assume, for the purpose of the argument, that "voluntary intoxication does not excuse one from the duty to use the same degree of care and prudence to protect himself against danger that is required of a sober man under the same circumstances" (note to *McIntosh* v. *Standard Oil Co.,* 47 L. R. A. (N. S.) 730), and that, if the appellee's intestate was voluntarily intoxicated on the occasion in question, and that the jury would have been warranted in finding that, if he had not so been, he would have discovered the danger which Steen was about to incur in going on the track in time to have warned him against it. Steen testified that he did not know whether the appellee's intestate was drinking on the occasion in question or not; so that the only question propounded to him on cross-examination which he was not permitted to answer was, "Do you know whose whisky that was in the car?" That fact would have been some evidence that the whisky that had been in the empty bottle had been drunk by one or more of the occupants of the car, but of itself alone would have been wholly insufficient to warrant the jury in believing that the appellee's intestate was intoxicated. If error was here committed, it was harmless.

The negligence with which the appellant is here charged is the alleged failure of its servants to ring the engine's bell or blow its whistle as its train was approaching the crossing. The grounds of the appellant's request for a directed verdict in its favor are:

(1) The evidence that the bell was not rung and the whistle was not blown is negative in character, and does

not warrant a finding that the one was not ringing or the other was not blowing as the train approached the crossing.

(2) The proximate cause of the striking of the automobile by the appellant's engine "was the stalling of the car on the track in front of the approaching train, at a time when it was impossible for the engineer to avoid striking the car."

Testimony that a fact did not occur, given by a witness "so situated that in the ordinary course of events he would have heard or seen the fact had it occurred," is sufficient to warrant a jury in finding that the fact did not occur. 1 Wigmore on Evidence, section 664; 23 C. J. 40; *Y. & M. V. R. R. Co.* v. *Lucken,* 137 Miss. 572, 102 So. 393; *Gulf & S. I. R. Co.* v. *Carlson,* 137 Miss. 613, 102 So. 168; *Grantham* v. *G. & S. I. R. Co.,* 138 Miss. 360, 103 So. 131; *G. M. & N. R. Co.* v. *Hudson,* 142 Miss. 542, 107 So. 369. Compare *Lucas* v. *Goff,* 33 Miss. 629.

The "stalling of the car" on the track in front of the approaching train, assuming that such is the fact, may have been, and probably was, a proximate cause of its being struck by the train; but there may be more than one proximate cause of an injury. And, in order for a defendant to be liable therefor, it is not necessary that his negligence be the sole proximate cause of an injury. He is liable if his negligence "concurs with one or more causes in producing an injury, . . . although his negligence, without such other independent intervening cause, would not have produced the injury." *Telephone Co.* v. *Woodham,* 99 Miss. 318, 54 So. 890. The jury, by its verdict, has found that the bell was not rung and the whistle was not blown as the train approached the crossing; and also, as it had the right to do, that the failure so to do contributed to the driving by Steen of the car on the track as the appellant's train was approaching the crossing. The appellant's request for a directed verdict was properly refused.

The appellant's objection to the instruction for the appellee, based on the *prima-facie* evidence statute (section 1985, Code of 1906 [Hemingway's 1927 Code, section 1717]), is that the evidence discloses all of the facts and circumstances surrounding the striking of the automobile by the appellant's engine, and therefore the presumption created by the statute, that the striking of the automobile was the result of negligence on the part of the appellant's servants, disappears, and the jury should decide the appellant's liability *vel non* without reference thereto. This may be conceded for the sake of the argument; nevertheless the instruction was properly given. This court so held forty-one years ago, in *Vicksburg & M. R. Co.* v. *Phillips,* 64 Miss. 693, 2 So. 537, since the decision of which case the statute has several times been reenacted. That case has never been overruled, and was followed and approved in *Railroad Co.* v. *Murray,* 91 Miss. 548, 44 So. 785; *Hollingshed* v. *Railroad Co.,* 99 Miss. 464, 55 So. 40; *Railroad Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674; *Railroad Co.* v. *Gray,* 118 Miss. 612, 79 So. 812; *Hines* v. *McCullers,* 121 Miss. 666, 83 So. 734; *Railroad Co.* v. *Knight,* 138 Miss. 621, 103 So. 377; *Railroad Co.* v. *Hudson,* 142 Miss. 542, 107 So. 369. Compare *Davis* v. *Elzey,* 126 Miss. 789, 88 So. 630, 89 So. 666; *Railroad Co.* v. *Arrington* (Miss.), 107 So. 378. The case of *Railroad Co.* v. *Fondren,* 145 Miss. 679, 110 So. 365, supports the appellant's contention. That case is in conflict with all of the court's prior decisions dealing with the statute, and is hereby overruled. The instruction does not contain the objectionable features that appear in the instructions condemned in *Southern R. R. Co.* v. *Daniell,* 108 Miss. 358, 66 So. 730.

The court below did not err in charging the jury that the negligence of the driver of the automobile could not be imputed to the appellee's intestate, nor in refusing to charge the jury that it was the duty of the appellee's intestate to stop, look, and listen before going on the rail-

road track. A guest in, or an occupant of, a vehicle being driven by another over whom he has no control, is not chargeable with the negligence of the driver of the vehicle (*Railroad Co.* v. *Davis,* 69 Miss. 444, 13 So. 693; *Hines* v. *McCullers,* 121 Miss. 666, 83 So. 734; *Coccora* v. *Vicksburg Light & Traction Co.,* 126 Miss. 713, 89 So. 257; *Y. & M. V. R. R. Co.* v. *Lucken,* 137 Miss. 572, 102 So. 393), but only with his own negligence in not remonstrating with the driver against the doing of a negligent ·act when the danger therefrom is, or should be, apparent to him (*Railroad Co.* v. *McLeod,* 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630; *Railroad Co.* v. *Lucken, supra*). As the appellee's intestate was not the driver of the automobile, and had no control over the driver thereof, it was, of course, not his duty to stop before going on the track; and it may or may not have been his duty to look or listen before doing so. It was the· duty of the driver to stop, look, and listen before driving on the track; that is to say, it was his duty to do whatever was reasonably necessary to ascertain whether a train was approaching before driving on the track. *Louisville, etc., R. R. Co.* v. *Crominarity,* 38 So. 633, 86 Miss. 464; *Hopson* v. *Railroad Co.,* 87 Miss. 789, 40 So. 872; *Skipworth* v. *Mobile & O. R. Co.,* 95 Miss. 50, 48 So. 964; *Ill. Cent. R. R. Co.* v. *Daniels,* 96 Miss. 314, 50 So. 721, 27 L. R. A. (N. S.) 128. The appellee's intestate had the right to depend on the driver to discharge this duty, unless and until it became, or should have become, apparent to him that the driver would not so do. In other words, the only duty that devolved on the appellee's intestate was to remonstrate with the driver of the car against going on the track, if and when it became, or should have become, apparent to him that a train was approaching. An instruction based on this rule was granted the appellant, but seems, from the record, not to have been read to the jury by it.

*Affirmed.*