NEW ORLEANS & NORTHEASTERN R. R. CO. *v.* JAMES.

No. 39523 April 11, 1955 79 So. 2d 230

*Cameron & Cameron,* Meridian, for appellant.

*L. D. Pittman,* Raleigh; *McFarland & McFarland,* Bay Springs, for appellee.

KYLE, J.

The appellee, Grady James, recovered a judgment in the Circuit Court of Jasper County against the appellant, New Orleans & Northeastern Railroad Company, for the sum of $1,925 as damages for injuries to a G. M. C. truck and trailer which were struck by one of the appellant's south-bound passenger trains at a railroad crossing near the Gulf States Creosoting Company plant south of Meridian on January 4, 1952.

The record shows that the truck was being operated by Panell Chandler, the appellee's truck driver, and that two passengers, Jordan Duckworth, a Negro, and Clarence Yelverton, a white man, were riding in the cab of the truck with him at the time of the accident. Chandler had delivered a load of piling to the Gulf States Creosoting Company plant, which was located on the east side of the railroad track, and was driving westwardly over a gravel road toward U. S. Highway No. 11 at the time of the accident. Chandler and Jordan Duckworth testified that when they reached the railroad stop sign the truck was brought to a stop, and they looked and listened, but neither saw nor heard a train approaching; that their view of the track looking northwardly was obstructed by bushes, weeds and vines growing along the east edge of the railroad right of way; but they could have heard the train whistle or the bell ring, if such signal had been given. The railroad track looking northwardly from the crossing was straight for a distance of

one half to three quarters of a mile. The crossing was located outside the city limits of the City of Meridian. There were three tracks at the crossing, and according to the engineer's testimony, the truck and trailer were struck as they passed over the third or westernmost track. When the collision occurred the truck and the trailer attached were torn apart; Clarence Yelverton, one of the occupants of the truck, was killed; and debris was scattered down the track for a distance of 81 yards.

The engineer testified that the train was made up of an engine and five coaches, and that the over-all length of the train was between 300 and 350 feet. The engineer stated that he was running at a rate of speed of about thirty miles per hour and was about 100 feet from the crossing when he saw the truck proceeding over the crossing. He applied his brakes immediately, but the last coach passed over the crossing before the train came to a complete stop. The engineer testified that the whistle and bell signals were given for more than nine hundred feet north of the crossing. No other member of the train crew testified.

J. W. Price, who operated a gasoline service station near the railroad crossing, testified that he was inside the service station at the time of the collision and did not see the collision, but he heard the train whistle and the bell ringing just before the impact. He stated that the whistle was blown twice after the train passed under the overpass 800 or 900 feet north of the crossing. The appellee, Grady Jones, was called to testify as a witness in rebuttal. Jones testified that he talked to Price a few hours after the accident, and that Price told him that he was inside the service station at the time of the accident and that he did not hear a whistle or a bell.

The appellant argues three points as grounds for reversal on this appeal: (1) That the appellee failed to establish his charge of negligence on the part of the appellant, and that the court erred in refusing to grant the

appellant's request for a directed verdict; (2) that the court erred in refusing to grant an instruction requested by the appellant which would have eliminated from the consideration of the jury the question of the speed at which the train was running at the time of the accident; and (3) that the court erred in granting the appellee's instructions which appears on page 10 of the record.

There was no error in the action of the trial judge in refusing to grant the peremptory instruction requested by the appellant. There was a direct conflict in the testimony of the witnesses for the appellee and the witnesses for the appellant on the question whether the warning signals required by the statute were given; and this conflict in the testimony presented an issue of fact for the jury to determine. And whether the failure to give the warning signals, if such signals were not given, directly or proximately caused or contributed to the accident which resulted in the injury to the truck and trailer was likewise a question for the jury to decide. Columbus & Greenville R. Co. v. Lee, 149 Miss. 543, 115 So. 782; Gulf & Ship Island R. R. Co. v. Simmons, 153 Miss. 327, 121 So. 144; New Orleans & Northeastern R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486; Louisville & N. R. Co. v. Whisenant et al., 214 Miss. 421, 58 So. 2d 908. As stated by the court in its opinion in Louisville & N. R. Co. v. Whisenant et al., supra, the jury might reasonably have concluded from all the evidence in the case that the warning signals were not given, and that if they had been given they would have served to warn the driver of the truck of the approaching train and thus avoided the collision at the crossing.

Neither was there error in the action of the trial judge, under the facts in this case, in refusing to grant the instruction requested by the appellant that the jury "should not find any verdict against the defendant by reason of the speed at which the train was running at the time of the accident." New Orleans & Northeastern

R. Co. v. Lewis, supra; Louisville & N. R. Co. v. Whise-
nant et al., supra. If the jury had concluded from the
evidence that the warning signals had not been given,
as they had a right to conclude, the speed at which the
train was running would have been a factor to be taken
into account by them in determining whether the failure
of the trainmen to give the warning signals was the prox-
imate cause or a contributing cause of the collision.

Complaint is made of the appellee's instruction which
appears on page 10 of the record. In that instruction
the jury was told that if they believed from the evidence
that the defendant's train was being run at the time of
the accident at an excessive rate of speed under all the
facts and circumstances, and that the property damage
of the plaintiff was proximately caused by the negligence
of the defendant's servants in charge of the train, the
plaintiff was entitled to recover.

 █ The instruction is criticized as being of a
''Mother Hubbard'' quality, in that it left open for the
jury to decide what constituted negligence. The criti-
cism of the instruction is justified in part at least; and
if no other instructions had been given, the giving of the
instruction might have constituted reversible error. The
only act of negligence referred to in the instruction com-
plained of was the excessive rate of speed. But the
plaintiff obtained two other instructions, based upon
the testimony of the plaintiff's witnesses, relating to the
alleged partial obstruction of the view of the approaching
train from the crossing by bushes and vines, and relating
to the alleged negligence of the defendant's trainmen in
failing to give the warning signals required by the
statute as they approached the crossing. And the de-
fendant obtained an instruction which told the jury that
they could not return a verdict for the plaintiff unless
the plaintiff had convinced them by a preponderance of
the evidence that the damages complained of occurred
by reason of the negligence of the defendant, as defined

in the instructions. ██ █ The rule is well-settled that the instructions must be read and considered as a whole; and when the instruction complained of is read and considered along with the other instructions, we think that the jury was not left "entirely at sea" as to what character of negligence was necessary to be proved in order to authorize the appellee to recover, and that the giving of the instruction complained of did not constitute reversible error.

The judgment of the lower court is therefore affirmed. Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.