Levina Pittman WALKER, Administratrix of the Estate of Louis Pittman, Deceased, Plaintiff-Appellant,

v.

LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Kentucky Corporation, Defendant-Appellee.

No. 77–2584
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 19, 1978.

John G. Corlew, Pascagoula, Miss., R. P. Jones, Gautier, Miss., Ramsom P. Jones, III, Marby R. Penton, Pascagoula, Miss., for plaintiff-appellant.

Raymond L. Brown, Pascagoula, Miss., for defendant-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

In this diversity damage suit plaintiff Levina Pittman Walker appeals from a directed verdict in favor of defendant Louisville & Nashville Railroad Company. Plaintiff is the administratrix of the estate of her son, Louis Pittman, who was killed when the vehicle he was driving was struck by one of defendant's trains at a railroad crossing in Ocean Springs, Mississippi. The directed verdict for defendant occurred at the close of plaintiff's case. We reverse.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Plaintiff alleges that the defendant railroad was negligent in several respects. First, that the train failed to sound the appropriate signals for a distance of 300 yards before the crossing as required by Miss.Code Ann. § 77–9–225 (1972).[1] Second, that the train was proceeding at an unreasonable rate of speed. In addition, plaintiff asserted that the railroad negligently maintained the intersection in that the "Mississippi Law Stop" sign was placed 35.7 feet rather than 50 feet from the tracks as required by Miss.Code Ann. § 77–9–247 (1972).[2] Finally, plaintiff contends that the engineer operating defendant's train negligently failed to keep a proper lookout, and that the crossing was unusually dangerous and required unusual precautions.

In reviewing the propriety of this directed verdict, the evidence must be considered in the light and with all reasonable inferences most favorable to plaintiff. *See Frazier v. Continental Oil Co.,* 5 Cir., 1978, 568 F.2d 378; *Owens v. International Paper Co.,* 5 Cir., 1976, 528 F.2d 606, 610–11 n. 7, *quoting Boeing Company v. Shipman,* 5 Cir., 1969, 411 F.2d 365, 374–75. Plaintiff's witness Frank Smith testified that at the time of the accident he was standing outside his apartment waiting for a ride to work. Smith stated that he heard defendant's train approaching, but that the train did not blow its whistle or sound its horn, and that he "heard no signal emitted whatsoever." Smith testified that he generally waited outside his home for a ride to work and listened for the train. Although the witness' home is approximately 1,700 feet from the intersection where the collision occurred (a greater distance than that required by law for a whistle to be audible), Smith stated that the blowing of the whistle was very distinct on other mornings. According to the witness, there was no adverse weather condition or other impediment to his hearing on the morning of the accident.

William E. Harper, the engineer of the train that killed Pittman, stated that he blew the whistle beginning a quarter mile from the crossing, but that decedent's van did not stop at the crossing as required by Miss.Code Ann. § 77–9–249 (1974). Harper testified that just prior to the collision the train was travelling at 43 miles per hour.[3]

Decedent's failure to obey the stop sign does not necessarily preclude recovery for plaintiff, as comparative negligence is the rule in Mississippi.[4] Thus, the directed verdict must be grounded on plaintiff's failure to demonstrate that defendant either was negligent or that defendant's negligence was a proximate cause of the collision.[5] Construing the evidence in favor of

---

1. The statute provides:

   Every railroad company shall cause each locomotive engine run by it to be provided with a bell of at least thirty pounds weight and with a whistle or horn which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is passed. Miss.Code Ann. § 77–9–225 (1972).

2. Miss.Code Ann. § 77–9–247 was amended in 1974. Under the new law, the "Mississippi Law Stop" signs are to be replaced by "railroad crossbucks." Miss.Code Ann. § 77–9–248 allows for the gradual replacement of the "Mississippi Law Stop" signs. The 1974 statute makes no reference to the number of feet from the track that the sign is to be placed. The

collision which killed Louis Pittman occurred in April 1975.

3. Harper stated that the speed limit for trains inside Ocean Springs municipal limits is 45 miles per hour.

4. *See Newman v. Missouri Pac. R.R. Co.,* 5 Cir., 1977, 545 F.2d 439, 444 (interpreting Mississippi law): "[f]ailure to stop, however, while it might go to reduce plaintiff's recovery under comparative negligence, does not as a matter of law excuse any negligence of defendant railroad"; *New Orleans & N.E.R.R. Co. v. Weary,* Sup.Ct., Miss., 1968, 217 So.2d 274, 277.

5. Although under Mississippi law the question of proximate causation in failure to stop at railroad crossing cases is for the jury, *see* Miss. Code Ann. § 77–9–249(3) (1974), we must apply the federal standard for sufficiency of evidence to create a jury question. *See Owens v. International Paper Co.,* 5 Cir., 1976, 528 F.2d

plaintiff, we are unable to find that a jury could not reasonably conclude that defendant failed to sound a warning signal as required by Miss.Code Ann. § 77–9–225 (1972), and that this negligence was a proximate cause of the death of Pittman. *See Badger v. Louisville & Nashville Railroad Co.,* 5 Cir., 1969, 414 F.2d 880, 883 (discussing proximate cause); *New Orleans and Northeastern Railroad Co. v. Weary,* Sup. Ct., Miss., 1968, 217 So.2d 274, 277–78 (where there was conflict on the issue of failure to sound the signal and the driver had failed to stop before the crossing). Only two witnesses testified as to whether the appropriate signal was sounded, and these witnesses were in flat disagreement.

In *Illinois Central Gulf Railroad Co. v. Yates,* Sup.Ct., Miss., 1976, 334 So.2d 364, the issue was whether the evidence supported a jury verdict based on the defendant railroad's failure to sound the signal before a crossing. The locomotive engineer and fireman said that the whistle was blown and the bell was rung well before the crossing. In addition, three bystanders stated that the signals were sounded substantially before the accident. On the other hand, three individuals who were outside before the collision testified that the whistle blew immediately before the crash, and three other witnesses who were indoors agreed that they heard the whistle blast just before the sound of the collision. The Supreme Court of Mississippi held that the jury verdict was against the overwhelming weight of the evidence. The court emphasized the testimony of the three bystanders who were not employees of the railroad. In addition, the court noted that plaintiff's witnesses did not state that the whistle did not blow before the blast that they heard immediately prior to the collision, drawing a distinction between affirmative evidence as to the sounding of the whistle and negative testimony that the signal was not heard. *Id.* at 367. The court explained this distinction by reference to *Mobile & O. R. Co. v. Johnson,* 1930, 157 Miss. 266, 271, 126

606, 610–11. The federal standard was set forth in *Boeing Company v. Shipman,* 5 Cir., 1969, 411 F.2d 365, 374–75, and quoted with

So. 827, 828, where the court noted that there was no proof that plaintiff's witnesses listened for the bell, that their attention was in any way directed to it, or that the witnesses must have heard it if it did ring.

The present case can easily be distinguished from *Yates.* Plaintiff's witness Frank Smith did not give merely negative testimony that he did not hear a horn or whistle, instead stating that one was not sounded. Smith claimed that he listened for the train each morning, and that he was able to hear the warning signal on other mornings. Another distinction from *Yates* is the absence of any witness not employed by the railroad who testified that the signal was sounded.

In *New Orleans & Northeastern Railroad Co. v. Anderson,* 5 Cir., 1961, 293 F.2d 97, this court addressed an almost identical question of Mississippi law. The defendant had appealed from a judgment entered pursuant to a jury verdict for plaintiff, claiming that the jury could not have found that defendant's engineer failed to sound the signal before the accident.

In addition there was conflicting testimony on the question of whether the train's whistle or bell was operating prior to the collision. The engineer and other witnesses testified that the whistle and bell were operating, and others testified that they were not in operation until the collision occurred. There was some testimony to the effect that those who were in position to hear the whistle or bell did not hear them. This is sufficient evidence to support a jury's finding that the bell and whistle were not operating. In *Columbus & Greenville R. Co. v. Lee,* 1928, 149 Miss. 543, 115 So. 782, 784, the Court stated that testimony that a fact did not occur, given by a witness 'so situated that in the ordinary course of events he would have heard or seen the fact had it occurred' is sufficient to warrant a jury in finding that the fact did not occur. *Id.* at 98–99.

approval by the *Owens* court, 528 F.2d at 610–11 n. 7.

We find *Anderson's* reasoning compelling in the present case. The engineer and Frank Smith disagreed as to whether the signal was given. Smith's testimony established that he was in a position to hear the signal if it had sounded. Thus, the district court's directed verdict for defendant must be reversed. The questions of negligence in failing to give the signal required by statute and proximate cause[6] are appropriate for determination by the jury under the circumstances of this case.

REVERSED AND REMANDED for a new trial on the issues presented.

---

**6.** For a discussion of proximate cause in a situation where the driver of a vehicle which collides with a train must, in all likelihood, have been aware of the train's presence when the accident was still avoidable, *see* Justice Lee's special concurrence in *Illinois Central Gulf R.R. Co. v. Yates,* Sup.Ct., Miss., 1976, 334 So.2d 364, 368–69; and *New Orleans & N.E. R.R. Co. v. Weary,* Sup.Ct., Miss., 1968, 217 So.2d 274, 277.

